# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, ) | | Cause No. CR-11-140-BLG-RFC |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | **ORDER DENYING MOTION** |
| ) | | **FOR MISTRIAL** |
| **RODRICK D. GANT,** ) | | |
| ) | | |
| Defendant. ) | | |
| _____ ) | | |

## INTRODUCTION

Rodrick D. Gant was indicted by a Grand Jury on December 21, 2011 charging him with Conspiracy to Commit Robbery Affecting Commerce (Count I) in violation of 18 U.S.C. § 1951(a), Possession of a Firearm During a Crime of Violence (Count II) in violation of 18 U.S.C. §§924(c)(1)(A) and 2, and Possession of a Firearm by Person Convicted of Misdemeanor Crime of Domestic Violence (Count III) in violation of 18 U.S.C. § 1951(a). (TT 29,31). On October 23, 2012, the jury found Rodrick Gant guilty of all three counts of the indictment. (TT 240).

1

Defendant has moved for a mistrial on Counts I and II claiming that a misstatement of the law by the government during closing arguments resulted in an improper verdict. The government argues that any error was harmless.

**BACKGROUND**

The evidence in the case demonstrated that Defendant agreed to participate in a plan to rob a drug trafficker and he was aware that the drug trafficker was traveling from one state to another to complete the transaction. TT 114.

Prior to trial, Defendant stipulated that the firearm involved in this case traveled in or affected interstate commerce, which was a concession of guilt to Count III, Possession of a Firearm by Person Convicted of a Misdemeanor Crime of Domestic Violence. *Doc. 62*. Specifically, the stipulation stated:

> The gun in question in this case, a Springfield Armory, modelXD40, .40 caliber semi-automatic pistol, s/n US389998, traveled in or affected interstate commerce. This element of proof required by the statute in question charged in Count III has been satisfied by this stipulation and thus the Government need not prove the nexus element at trial.

*Doc. 62*.

The issue at trial was whether the government was able to prove the required element of interstate commerce in relation to Counts I and II.

In closing argument, the government discussed the interstate commerce elements and stated:

> Ladies and gentlemen, the elements that the Judge gave you in this case, and the instructions are 37 pages, and you'll get to take those back with you and read them. There are several instructions that I want to point you to, because the big issue in this case is really not what occurred, because you have it all on videotape and you have it on audiotape. What one of the big issues is, is: Was there interstate commerce in this case? And that's one of the things that the government must prove.
>
> Well, in this case, there are also a couple of stipulations that are important. One of the stipulations that the defendant entered into was that he's got a prior partner/family member assault conviction, which is the subject of Count Three. And he basically said to you in his opening, you know, they were conceding that, that he was, basically, guilty of Count Three.
>
> But one of the other stipulations was, was that the gun that he had in his possession that he had first in his waistband, and that he showed to Agent Forster and that you saw, traveled in interstate commerce. So that gun did not originate in Montana. So by his own very admission, the gun that he was using affected interstate commerce.

TT 226.

Defendant refuted the government's argument by clarifying the extent of the stipulation and stated:

3

> Yes, we concede Count Three. You're going to convict him of Count Three. We told you that a long time ago. But we did not stipulate to interstate commerce as it affects to Counts One or Counts Two. And as you've been told, if you find Rodrick Gant, and we believe you should find him not guilty of Count One, you will be required to find him not guilty of Count Two.

TT 229.

> The gun moved in interstate commerce. Find him guilty. Counts One or Two, they have not met their burden. There is not proof beyond a reasonable doubt that, in fact, affected interstate commerce.

TT 232.

Finally, the government stated:

> Ladies and gentlemen, interstate commerce can be shown in two different ways, as the judge said to you, a direct effect on interstate commerce, a de minimis effect is all, basically, interstate nexus is satisfied by proof of probable or potential impact.
>
> That's why these cases are set up the way they are. That's why the setup is drug dealer travels from out of state in interstate commerce to another state with drugs or drug money. That is interstate commerce, ladies and gentlemen. It's also a direct effect on interstate commerce, because he stipulated to the fact that the gun traveled in interstate commerce that he used. I didn't say that the stipulation was that he was guilty of Counts One and Two. But he's stipulated that the gun traveled. If that's good enough for Count Three, being interstate commerce, why is that not good enough for guilty on Counts One and Two?

4

> Ladies and gentlemen, it's the argument I would make if I had nothing other than what I had in this case. But the reality is: You have a number of items of evidence that can show you both direct and indirect effect on interstate commerce. You didn't need an agent to get up and say: "A drug dealer who travels from Arizona to Montana is in interstate commerce. A drug dealer who has drug money travels in interstate commerce."
>
> The setup was specifically in the tape that you heard, and the tape was: "I got a couple things cooking. I've got this amazing bone. This guy's coming up from Arizona with one to four bricks of cocaine. He pays for half up front, but I'm not going to have any bricks. It's all drug money. He turns it around; turns it around; goes back down, and he does this over and over and over."
>
> They set up exactly interstate commerce. This is what this guy does. And that's why it's set up this way, so that it is a Hobbs Act robbery. Interstate commerce is affected.

TT 233-34.

Defendant moved for a mistrial. The Court reserved ruling to allow for briefing. TT 236-37.

## STANDARD OF REVIEW

Improprieties in a prosecutor's arguments do not constitute reversible error "unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." *United States v. Birges*, 723 F.2d 666, 672 (9th Cir. 1984). The Ninth Circuit has previously held that a "single, isolated

5

comment in a lengthy closing argument and rebuttal, which included a number of accurate statements . . . [of law]" did not infect the proceedings with unfairness. *Leinweber v. Tilton*, __ F.3d ___ (9th Cir. 2012), No. 09-15593, 2012 WL 3059296 (9th Cir. July 27, 2012)

Jury instructions given by the Court act to remedy a misstatement of law by the Government. "Instructions from a judge carry more weight than statements of law from counsel, and jurors are presumed to follow the jury instructions they are given." *Leinweber v. Tilton*, __ F.3d ___ (9th Cir. 2012), No. 09-15593, 2012 WL 3059296 (9th Cir. July 27, 2012); *Boyde v. California*, 494 U.S. 370, 384-85 (1990); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

In *United States v. Artus*, the Ninth Circuit found that a misstatement of law given by a prosecutor and by the trial court clearly led to jury confusion. *United States v. Artus*, 591 F.2d 526, 528 (9th Cir. 1979). The confusion and the misstatement by both the court and the prosecution prejudiced the defendant and required a reversal. *Id*. at 528.

In this case, the government concedes that it made a misstatement of the law, however, argues that it was harmless error. A close examination of what the government stated during closing arguments reveals that the government explained how the jury could find an effect on interstate commerce and explained

that is why the fictitious drug dealer was coming from out of state. However, then the government made a misstatement and stated that the gun stipulated to for Count III traveled in interstate commerce and made a correlation between that interstate commerce and Counts I and II. The government immediately thereafter clarified the misstatement and pointed out to the jury, regardless of the stipulation, that there was evidence that Defendant intended to rob a drug dealer that was engaged in interstate commerce, which met the jurisdictional element of Counts I and II. TT 235-36.

Additionally, this Court gave very specific jury instructions that provided the law for the jury, including an instruction on how the government is required to establish an effect on interstate commerce:

> Interstate commerce may be established by showing either that the crime has a direct effect or an indirect effect on interstate commerce.
>
> To establish a direct effect on interstate commerce the government need only establish that a defendant's acts had a de minimis effect on interstate commerce. The interstate nexus requirement is satisfied by proof of a probable or potential impact on interstate commerce. The government need not show that a defendant's acts actually affected interstate commerce.
>
> Where the Defendant's conduct has no direct effect on interstate commerce, but only an indirect effect the government must show that the Defendant:

>(1) stole from a person directly and customarily engaged in interstate commerce; or
>
>(2) created a likelihood that the assets of an entity engaged in interstate commerce would be depleted.

*Doc. 81, instruction 21.*

The jury was specifically instructed that "what the lawyers [will say in their] closing arguments . . is intended to help you interpret the evidence, but it is not evidence." *Doc. 81, instruction 6.*

These instructions corrected any possibility of confusion as to the misstatement by the government, which neutralized any prejudice. Unlike the jury in *Artus*, there is no evidence that the misstatement led to any jury confusion regarding a connection with interstate commerce. *See United States v. Artus*, 591 F.2d 526, 528 (9th Cir. 1979).

I listened to the evidence in this case and the government adequately established during trial that Defendant's conduct met the interstate commerce elements for Counts I and II. Defendant agreed to participate in a plan to rob a drug trafficker and he was aware that the trafficker was traveling from one state to another to complete the transaction. TT 114. During trial, testimony was presented that Defendant was aware of the plan to rob the drug trafficker and was

ok with it. TT 114. Defendant arrived on the day of the robbery with a gun and indicated that they intended to shoot the drug dealer. Government's Exhibit 116. This clearly established that the Defendant knowingly engaged in a conspiracy to rob an out of state drug dealer. This conduct suffices to establish the interstate commerce elements in both Counts I and II. *See United States v. Rodriguez*, 360 F.3d 949, 956 (9th Cir. 2004) (robbery of a drug dealer is of such a nature to affect interstate commerce even if the dealer never enters interstate commerce).

The government's error was harmless and any prejudice was neutralized by the Court's jury instructions. Defendant's Motion for Mistrial (*Doc. 98*) is **DENIED**.

Dated this 11th day of February, 2013.

*/s/ Richard F. Cebull*_____
Richard F. Cebull
United States District Judge