
FILED
MAY 7 2018
Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>RODRICK D. GANT,<br><br>Defendant/Movant. | Cause No. CR 11-140-BLG-SPW-2<br>CV 15-022-BLG-SPW<br><br>ORDER GRANTING § 2255<br>MOTION AND SETTING<br>RE-SENTENCING |

This matter comes before the Court on Defendant/Movant Gant's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Gant is a federal prisoner represented by counsel.

The controlling pleading is Gant's second amended motion (Doc. 149). The motion sets forth two claims for relief. The first claim alleges that Gant's conviction and sentence under 18 U.S.C. § 924(c) are invalid under the rule of *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015). The second claim alleges that trial counsel failed to relay to Gant all written plea offers, contrary to the rule of *Missouri v. Frye*, 566 U.S. 133 (2012). The parties were required to complete discovery before the end of 2016. *See* Order (Doc. 163).

On January 23, 2017, Gant filed a motion for summary judgment on the *Johnson* claim. As the motion does not mention the *Frye* claim and Gant also does

1

not seek an evidentiary hearing on that claim, the Court presumes he does not intend to pursue it. It is denied as abandoned, as are any claims set forth in pleadings filed prior to the second amended motion.

## I. Background

On December 22, 2011, a grand jury indicted Gant and a co-defendant, Edwin Alberto Johnson, on one count of conspiracy to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (Count 1); one count of possessing or aiding and abetting possession of a firearm in furtherance of a crime of violence, that is, the conspiracy alleged in Count 1, a violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 (Count 2); and one count of possessing a firearm after conviction of a misdemeanor crime of domestic violence, a violation of 18 U.S.C. § 922(g)(9) (Count 3). Following a jury trial, Gant was convicted on all three counts. *See* Verdict (Doc. 84).

A presentence report was prepared. Based on a total offense level of 19 and a criminal history category was IV, the advisory guideline range on Counts 1 and 3 was 46 to 57 months. Gant was sentenced to serve 46 months in prison on Counts 1 and 3, plus a mandatory consecutive term of 60 months on Count 2, for a total term of 106 months, to be followed by a five-year term of supervised release. *See* Minutes (Doc. 112); Judgment (Doc. 113) at 2-3.

Gant appealed, but his conviction was affirmed. *See United States v. Gant*,

2

No. 13-30047 (9th Cir. Apr. 23, 2014) (mem. disp.) (Doc. 121). Gant's conviction became final on July 22, 2014. *See Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012).

Gant now seeks relief under the United States Supreme Court's recent decision in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015).

## II. Merits

Everyone would agree that a person who plans to use a firearm to commit a robbery is planning to use or at least threaten violence. Gant's plan for committing a robbery included using a firearm. But that does not necessarily mean he possessed a firearm in furtherance of a "crime of violence" within the meaning of 18 U.S.C. § 924(c).

### A. "Crime of Violence"

Congress penalizes those who use a firearm to commit federal drug trafficking crimes and federal crimes of violence. Pursuant to 18 USC §924(c)(1)(A), a person who does the following will be penalized:

> any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm[.]

Drug trafficking is not at issue here. The question is whether Gant possessed a firearm in furtherance of a "crime of violence." Congress defines the term as follows:

3

> For purposes of this subsection [§ 924(c)] the term "crime of violence" means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

A person who trades a firearm for advice on how to commit tax fraud arguably uses the firearm during and in relation to tax fraud, or at least possesses the firearm in furtherance of tax fraud. *Cf. Watson v. United States*, 552 U.S. 74, 76 (2007); *Smith v. United States*, 508 U.S. 223, 241 (1993). But § 924(c) could not apply to that person, because tax fraud is not a "crime of violence"—that is, it does not have force as an element, and it does not "by its nature" involve a substantial risk that force will be used.

A person who uses a firearm to extort advice on how to commit tax fraud is at least threatening to use violence, and might even use violence, during and in relation to the crime of tax fraud. It would be reasonable to authorize punishment for using a firearm in that manner. Congress once did so. *See* Omnibus Crime Control Act of 1970, Pub. L. No. 91-644, tit. II, § 13, 84 Stat. 1889, 1890 (Jan. 2, 1971) (authorizing additional one- to ten-year penalty for using a firearm to commit or unlawfully carrying a firearm during commission of "any felony"

4

prosecutable in court of the United States); Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 1005(a), 98 Stat. 1837, 2138-39 (Oct. 12, 1984) (replacing former § 924(c) with provision imposing five-year sentence for using or carrying a firearm during and in relation to a crime of violence); *see also* Firearms Owners' Protection Act, Pub. L. No. 99-308, § 104(a)(2)(F), 100 Stat. 449 (May 19, 1986) (enacting definition of "crime of violence" currently found in § 924(c)(3)).

But Congress does not do so now. Since 1984, Congress has limited the instances in which a person can be punished for using or carrying a firearm in criminal activity. Section 924(c) could not apply to a person who uses a firearm to extort tax fraud advice, because tax fraud does not meet Congress's definition of a crime of violence.

**B. Categorical Approach**

Gant conspired to commit a robbery. The question is whether a conspiracy to commit robbery meets Congress's definition of a "crime of violence."

Here, the key characteristic of Congress's definition of a "crime of violence" is that it applies to categories of crimes, not to the circumstances in which an individual defendant uses or carries or possesses a firearm. Necessarily so, using a firearm as a weapon to commit a crime would make *any* crime a violent one. But if that was what Congress intended, the phrase "crime of violence" would be

5

superfluous.

Congress uses the identical phrase, "crime of violence," elsewhere in Title 18, *see* § 16. It uses a similar phrase, "violent felony," elsewhere in § 924, at subsection 924(e)(2)(B). As to both § 924(e)(2)(B) and § 16, courts use a "categorical approach" to decide whether a given crime fits Congress' definition. This approach looks "only to the statutory definitions" of the crime, "not to the particular facts underlying" an individual defendant's commission of the crime. *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also United States v. Sherbondy*, 865 F.2d 996, 1009-10 (9th Cir. 1988) (holding that district court may look only "to the statutes establishing the crimes," not "the individual defendant's specific conduct in committing the . . . offense."), *cited in Taylor*, 495 U.S. at 600.

The Ninth Circuit has long required courts use the categorical approach to interpret § 924(c)(3) just as they interpret § 924(e)(2)(B) and § 16. *See United States v. Benally*, 843 F.3d 350, 352 (9th Cir. 2016); *United States v. Mendez*, 992 F.2d 1488 (9th Cir. 1993). Section 924(c) only penalizes those who possess a firearm in furtherance of *some* crimes. For the penalty to apply, the predicate crime to a §924(c) conviction must *always* be a "crime of violence", regardless of how a particular defendant might commit the crime, and regardless of whether a firearm is possessed in furtherance of it. "A crime cannot categorically be a 'crime of violence' if the statute of conviction punishes any conduct not encompassed by

6

the statutory definition of a 'crime of violence.'" *Benally*, 843 F.3d at 352.

### C. The Residual Clause, § 924(c)(3)(B)

Robbery "involves a substantial risk that physical force against the person . . . of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). Even if "use" is taken to mean an instrumental, purposeful deployment of force, the residual clause only requires a *substantial risk* that force *may* be used, not that it must be used or attempted or threatened every time.

This is where Gant's reliance on *Johnson* comes in. *Johnson* concerned a phrase in § 924(e)(2)(B) (the "Armed Career Criminal Act," or "ACCA"), defining a "violent felony" as a felony that "is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii). *Johnson* held the italicized portion, commonly called the residual clause, unconstitutionally vague.

Section 16(b) is a similar though not identical clause to §924(c)(3)(B). Section 16(b) defines a "crime of violence" as a felony "that, *by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense*." On April 17, 2018, the United States Supreme Court affirmed the Ninth Circuit Court of Appeals in holding that the residual clause of § 16(b) is unconstitutionally vague under the rule of *Johnson*. *See Sessions v. Dimaya*, No. 15-1498, slip op. at 24-25 (U.S. Apr.

7

17, 2018).

Even after *Dimaya*, § 924(c)(3)(B) might not necessarily be unconstitutionally vague, but it is in the Ninth Circuit. *Mendez* and *Benally* hold that § 924(c)(3)(B) is applied by using the categorical analysis, and that method lies at the heart of *Johnson* and *Dimaya*. As the Supreme Court succinctly explained in *Welch v. United States*, __ U.S. __, 136 S. Ct. 1257 (2016), *Johnson* held that § 924(e)(2)(B)(ii) "failed not because it adopted a 'serious potential risk' standard but because applying that standard *under the categorical approach* required courts to assess the hypothetical risk posed by an abstract generic version of the offense." *Id.* at 1262 (emphasis added). Acknowledging that some crimes might be "clearly risky," the Court nevertheless held the clause unconstitutionally vague and unenforceable in any case. *See Johnson*, 135 S. Ct. at 2560-61.

Likewise, in *Dimaya*, the Supreme Court said:

> [Section] 16(b) has the same two features that conspired to make ACCA's residual clause unconstitutionally vague. It too requires a court to picture the kind of conduct that the crime involves in the ordinary case, and to judge whether that abstraction presents some not-well-specified-yet-sufficiently-large degree of risk. The result is that § 16(b) produces, just as ACCA's residual clause did, more unpredictability and arbitrariness than the Due Process Clause tolerates.

*Dimaya*, No. 15-1498, slip op. at 11 (U.S. Apr. 17, 2018) (internal quotation marks, brackets, and citations omitted).

This Court is not able to imagine how § 924(c)(3)(B), which is textually

8

identical to § 16(b) and also applied by using categorical analysis, could be salvaged. At least in the Ninth Circuit at this time, it is unconstitutionally vague.

### D. *Mendez* and Law of the Circuit Doctrine

Gant asserts, and the United States agrees, that a conspiracy to commit a Hobbs Act robbery does not have, as an element, the use or attempted or threatened use of physical force against the person or property of another. *See* Def. Br. (Doc. 166) at 5-10; U.S. Resp. (Doc. 168) at 8-10. Therefore, § 924(c)(3)(A) need not be considered. However, one other point must be addressed.

In *Mendez*, the Ninth Circuit held that Gant's crime—conspiracy to commit a Hobbs Act robbery—is a "crime of violence" under 18 U.S.C. § 924(c)(3)(B). *Id.* at 1491. Generally, a published decision of the Ninth Circuit Court of Appeals is binding authority that "must be followed unless and until overruled by a body competent to do so." *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). Neither the Ninth Circuit nor the Supreme Court has overruled *Mendez*.

But a published decision loses its precedential force if subsequent binding precedent has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *Hart*, 266 F.3d at 1170; *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc)). In that

9

circumstance, district courts instead "should consider themselves bound by the intervening higher authority and reject the prior opinion . . . as having been effectively overruled." *Gonzalez*, 677 F.3d at 389 n.4.

The United States argues that "this offense involves Gant and another person agreeing to rob another drug dealer and discuss[ing] their plans to kill the drug dealer." U.S. Resp. (Doc. 168) at 16. This argument fails to recognize binding circuit precedent applying categorical analysis to § 924(c). Under categorical analysis, whether the defendant's conduct "involved such facts is 'quite irrelevant.'" *Moncrieffe v. Holder*, __ U.S. __, 133 S. Ct. 1678, 1684 (2013) (quoting *United States ex rel. Guarino v. Uhl*, 107 F.2d 399, 400 (2d Cir. 1939)). "How a given defendant actually perpetrated the crime . . . makes no difference." *Mathis v. United States*, __ U.S. __, 136 S. Ct. 2243, 2251 (2016).

*Mendez* remains binding precedent to the extent it applies the categorical analysis under § 924(c). *See, e.g., Benally*, 843 F.3d at 352. Neither the Ninth Circuit nor the Supreme Court has issued a decision that is "clearly irreconcilable" with that portion of *Mendez*. But *Mendez*'s holding that conspiracy to commit a Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(3)(B), *see* 992 F.2d at 1491, is clearly irreconcilable with *Johnson* and *Dimaya*. The Court is not bound to follow *Mendez*. In fact, the court is bound *not* to follow *Mendez*. *See Gonzalez*, 677 F.3d at 389 n.4. Section 924(c)(3)(B) is unconstitutionally vague.

10

### III. Procedural Defense

Unless the United States is correct that Gant's § 2255 motion is barred on procedural grounds, he is entitled to relief. It asserts that the motion is not timely because the claim does not relate back to the timely-filed original § 2255 motion, *see* 28 U.S.C. § 2255(f)(1); *Mayle v. Felix*, 545 U.S. 644, 664 (2005), and § 2255(f)(3) does not apply. *See* Answer (Doc. 154) at 4-9; Resp. to Mot. (Doc. 168) at 5-8.[1]

#### A. Statute of Limitations

The statute of limitations, 28 U.S.C. § 2255(f), provides:

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final; [or]

. . .

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]

The United States argues that *Johnson* did not mention § 924(c) and, as a result, Gant cannot identify a "right" the Supreme Court has recognized as

---

[1] When the United States was ordered to respond to Gant's second amended motion, it was advised it must "raise and brief any and all defenses it wishes the Court to consider. Defenses not raised will be deemed waived." Order (Doc. 151) at 1 ¶ 1. The United States' answer to the § 2255 motion did not mention procedural default. *See* Mot. to Dismiss and Resp. to Mot. (Doc. 154), *passim*. Therefore, procedural default will not be addressed.

11

applicable in his case. *See* Answer at 8-9. In sum, the United States claims Gant's motion is too late under § 2255(f)(1) and, if anything, premature under § 2255(f)(3).

For four reasons, the Court disagrees with this interpretation.

### 1. Narrow Scope of the "Right"

First, the United States suggests *Johnson* announces only "a defendant's right not to have his sentence increased under the residual clause of the ACCA," as the Tenth Circuit recently put it. *See United States v. Greer*, 881 F.3d 1241, 1248 (10th Cir. 2018) (holding that *Johnson* did not make timely under § 2255(f)(3) a § 2255 motion seeking relief against sentence imposed under mandatory Guidelines scheme).

But § 2255 does not say anything requiring a federal court to define "the right asserted" so narrowly. It is just as accurate to say that *Johnson* announced a right not to be penalized under a clause that is applied by categorical analysis and "ha[s] both an ordinary-case requirement and an ill-defined risk threshold." *See Dimaya*, No. 15-1498, slip op. at 24. *Dimaya* confirms the latter characterization of the "right" established by *Johnson*. In that case, the Supreme Court said, "*Johnson* is a straightforward decision, with equally straightforward application here," and "tells us how to resolve this case" under § 16(b) of Title 18. *Dimaya*, No. 15-1498, slip op. at 6, 24. If the right recognized in *Johnson* were confined to

12

ACCA, *Dimaya* would not have been decided as it was.

### 2. Delay

Second, the United States suggests Gant must wait to file his § 2255 motion until the Supreme Court decides a case under § 924(c). But, as Chief Justice Roberts pointed out in his dissent in *Dimaya*, the language of § 16(b) is incorporated or repeated in numerous places in the U.S. Code, "including provisions concerning racketeering, money laundering, domestic violence, using a child to commit a violent crime, and distributing information about the making or use of explosives," as well as § 924(c). *See Dimaya*, No. 15-1498, slip op. at 14-15 (Roberts, Ch. J., dissenting). The United States' argument would seem to require the Supreme Court to decide whether the "right" in *Johnson* applies to each statute *before* a federal defendant could file a § 2255 motion.

Congress intended the statute of limitations "to eliminate delays in the federal habeas review process," *Holland v. Florida*, 560 U.S. 631, 648 (2010), not to create them. Requiring people who "assert" that *Johnson* gives them a right to relief to file within a year of *Johnson*'s issuance serves Congress's purpose much better. Anyone who asserts that a later case applying *Johnson* confers a right to relief—say, *Dimaya*, or a case specifically addressing § 924(c)—is unlikely to receive the benefit of § 2255(f)(3), because the Court "initially recognized" the "right asserted" in *Johnson*, not in *Dimaya* or a later case.

13

### 3. Redundancy

Third, the United States' argument needlessly entangles the question of when to file with the decision as to whether the movant actually has the right he asserts: If the filing is timely, it is meritorious; if it lacks merit, it is untimely. This leaves the limitations period with no work to do. Statutes of limitation are not generally redundant with the merits of a claim in this way.[2]

The other provisions of the limitations period, § 2255(f)(1), (2), and (4), are independent of the merits of the claim presented. By simply reading § 2255(f)(3) to require a defendant asserting a new right to relief to file within a year of the Supreme Court's initial decision recognizing the right, § 2255(f)(3) is as easy to apply and as independent of the merits as the other subsections of the limitations period.

### 4. Section 2255(f) vs. Section 2254(d)

Finally, the United States' interpretation seeks to turn a timeliness provision into a restriction on federal courts' responsibility to say what the law is in federal criminal cases on collateral review. Some courts have found that § 2255(f)(3) imports *Teague v. Lane*, 489 U.S. 288 (1989)—which had nothing to do with a

---

[2] On the other hand, a motion that lacks merit might still be timely if equitable tolling applies or, in the case of a state prisoner, if statutory tolling applies. *See* 28 U.S.C. § 2244(d)(1)(C), (d)(2). So the "new right" limitations period would be worse than redundant.

14

statute of limitations—into one subsection of the statute of limitations that now applies to federal prisoners filing § 2255 motions. *See, e.g., Greer*, 881 F.3d at 1246-47.

Section 2255 imposes several restrictions, but it does not go as far as some courts have held. Section 2255(f)(3) *does* limit federal prisoners to asserting new rights that are recognized by the Supreme Court, as opposed to new rights recognized by federal appellate courts or conferred by federal statutes or rules. A provision restricting second or successive motions, § 2255(h)(2), *does* limit federal courts' authority to hear successive motions that are based on new constitutional rules, but it simply requires the Supreme Court to recognize the rule and also say it is retroactive. Section 2255(h) does not say anything that restricts the scope or application of a new constitutional rule.

If Congress wanted to restrict federal courts' authority to award collateral relief to federal prisoners, it knew how to do it. It *did* curtail federal courts' authority to award federal habeas relief to *state* prisoners. 28 U.S.C. § 2254(d)(1) provides that an application for federal habeas relief "shall not be granted unless" the state courts' decision of the claim was "contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States."

To do the same thing in § 2255, where rights newly recognized by the

Supreme Court are concerned, Congress would have said something very simple, for instance, "A motion based on a newly recognized right shall not be granted unless the movant's right to relief is clearly established by the Supreme Court of the United States." As Congress did not say that, § 2255 does not limit collateral relief for federal prisoners to cases where relief is dictated by precedents of the Supreme Court.

### 5. Conclusion

Gant asserts that *Johnson* gives him a right to relief. He filed within one year of the date the Supreme Court decided *Johnson*. His § 2255 motion is timely under § 2255(f)(3).

## IV. Conclusion

Section 924(c)(3)(B) is unconstitutionally vague because it uses the same language and is interpreted by the same method as the provisions at issue in *Johnson* and *Dimaya*. Gant did not commit a "crime of violence" and his conviction on Count 2 is invalid. Further, his motion was timely filed.

Gant's conviction on Count 2 will be vacated and he will be re-sentenced on Counts 1 and 3. *See Dean v. United States*, __ U.S. __, 137 S. Ct. 1170, 1176 (2017); *Greenlaw v. United States*, 554 U.S. 237, 253-54 (2008); *United States v. Handa*, 122 F.3d 690, 691-92 (9th Cir. 1997). The new sentence will be determined by applying 18 U.S.C. § 3553(a) and, except as limited by *Peugh v.*

16

*United States*, 569 U.S. 530 (2013), the 2016 Sentencing Guidelines Manual.

A certificate of appealability need not be considered because this decision is not adverse to Gant. *See* Rule 11(a), Rules Governing § 2255 Proceedings.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Gant's motion for summary judgment (Doc. 165) and his second amended motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 149) are GRANTED as to the *Johnson* claim only. All other claims are DENIED.

2. The conviction on Count 2 is VACATED.

3. Sentencing is set for **Thursday, September 13, 2018,** at **9:30 a.m.** in the James F. Battin Courthouse, Billings, Montana.

4. The United States Probation Office shall conduct a supplemental presentence investigation and prepare a new presentence report omitting conviction and sentence on Count 2. Fed. R. Crim. P. 32(c), (d); 18 U.S.C. § 3552(a).

5. The probation officer shall disclose the completed report, except for recommendations of the probation officer, to Defendant, counsel for Defendant, and counsel for the government on or before **July 25, 2018.** The probation officer shall not disclose any recommendation made or to be made to the Court.

6. If restitution is mandatory, the probation officer shall discuss a payment plan with Defendant and shall make recommendations to the Court concerning

interest and a payment schedule.

7. Counsel shall attempt in good faith to resolve disputes over any material in the presentence report. Unresolved objections to be relied upon at sentencing shall be presented to the probation officer on or before **August 8, 2018.** U.S.S.G. § 6A1.2. **Any unresolved objections are expected to be included in the presentence report, not in a sentencing memorandum.**

8. The presentence report, in final form, including any unresolved objections, shall be delivered to the Court and the parties on or before **August 22, 2018.**

9. Sentencing memoranda and supporting documents addressing all relevant sentencing issues shall be filed on or before **August 29, 2018.** Absent good cause shown, sentencing memoranda and supporting documents filed after **August 29, 2018,** will not be considered in addressing sentencing issues. Failure to timely file sentencing memoranda may result in imposition of sanctions against counsel.

10. Responses to sentencing memoranda shall be filed on or before **September 5, 2018.**

11. Reply briefs will not be accepted for filing in sentencing matters.

12. The Court will resolve objections included in the Addendum to the presentence report at the sentencing hearing in accordance with U.S.S.G. § 6A1.3.

13. All parties that intend to have witnesses testify at sentencing shall give

18

notice to this Court ten days prior to the sentencing date.

14. The United States Marshals Service must transport Rodrick D. Gant, BOP # 11519-046, to the District of Montana. Gant must be present in Montana and available to consult with counsel at least 30 days before sentencing.

15. When an Amended Judgment is entered in the criminal case, the clerk shall enter judgment in the civil action, by separate document, in favor of Gant and against the United States.

DATED this 7th day of May, 2018.

SUSAN P. WATTERS
United States District Court Judge

cc: USMS
USPO